IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :
                                                :    CASE NO. 10-09953 (ESL)
JOSE R. JIMENEZ GARCIA                           :
MIRIAM ACEVEDO LOPEZ                              :
                                                :    CHAPTER 13
        Debtors                                  :
-------------------------------------------------- :
                                                :    ADVERSARY NO. 11-00088
JOSE R. JIMENEZ GARCIA                           :
MIRIAM ACEVEDO LOPEZ                              :
                                                :
        Plaintiffs                               :
                                                :
            vs.                                  :
                                                :
DEPARTMENT OF TREASURY OF THE                    :
COMMONWEALTH OF PUERTO RICO;                     :
ALEJANDRO OLIVERAS RIVERA AS                     :
STANDING CHAPTER 13 TRUSTEE                      :
                                                :
        Defendants                               :
                                                :

OPINION AND ORDER

This adversary proceeding is before the Court upon the Plaintiffs' *Amended Motion for Partial Summary Judgment* ("*Motion for Partial Summary Judgment*", Docket No. 29) and defendant Department of Treasury of the Commonwealth of Puerto Rico's ("PR Department of Treasury") *Opposition* thereto (Docket No. 39). The Plaintiffs seek partial summary judgment in regards to the PR Department of Treasury's liability due to an alleged willful violation of the automatic stay. For the reasons stated below, the Plaintiffs' *Motion for Partial Summary Judgment* is partially granted.

Uncontested Factual and Procedural Background

The Plaintiffs filed their Chapter 13 bankruptcy petition on October 25, 2010 (Lead Case Docket No. 1). On their Schedule F, they did not include the PR Treasury Department as an unsecured creditor nor did they include it in the creditor matrix (Lead Case Docket No. 1, pp. 30-32, and 46). On even date, the Plaintiffs filed their proposed Chapter 13 Plan (Lead Case Docket No. 2).

The *Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines* was issued to creditors and mailed on October 28, 2010 (Lead Case Docket No. 6). Its *Certificate of Service* reveals that the PR Treasury Department was notified by regular mail (Lead Case Docket No. 6, p. 5; Docket

No. 29, p. 17).

On March 11, 2011, Scotiabank of Puerto Rico received a *Notice of Attachment to Third Persons of Personal Property and Defaulting Debtor* ("*Notificación de embargo a terceras personas en poder de bienes muebles y a deudor moroso*") issued by the PR Treasury Department seeking to attach any and all of Plaintiffs' accounts in that financial institution and turnover any and all funds therein payable to the order of the Secretary of Treasury Department. The *Notice* also itemized all of Plaintiffs' alleged past due taxes in 1999, 2000 and 2001, plus interest and penalties, in the amount of $21,500.83. See Docket No. 29, p. 18.

On March 14, 2011, Doral Bank ("Doral") received a *Notice of Attachment to Third Persons of Personal Property and Defaulting Debtor* ("*Notificación de embargo a terceras personas en poder de bienes muebles y a deudor moroso*") issued by the PR Treasury Department seeking to attach any and all of Plaintiffs' accounts in that financial institution and turnover any and all funds therein payable to the order of the Secretary of Treasury Department. The *Notice* also itemized all of Plaintiffs' alleged past due taxes in 1999, 2000 and 2001, plus interest and penalties, in the amount of $21,500.83. See Docket No. 29, pp. 19-20.

On March 18, 2011, Doral issued a letter to the Plaintiffs indicating that pursuant to PR Treasury Department's *Notice*, the bank seized from their account the amount of $1,732.51 and charged them a $50.00 processing fee (Docket No. 29, p. 20).

On March 19, 2011, the Plaintiffs filed an Amended Schedule F including the PR Treasury Department as an unsecured creditor in the amount of $21,500.83 (Lead Case Docket 22, p. 4) and a notice to creditors, including the PR Treasury Department, was issued that same day (Lead Case Docket No. 23).

On April 12, 2011, the Plaintiffs filed a *Complaint* against the PR Treasury Department and the Chapter 13 Trustee in the instant adversary proceeding (Docket No. 1). The Chapter 13 Trustee was only included for notice purposes and no remedy was sought against him (Docket No. 1, p. 5, ¶ 6).

On April 15, 2011, the PR Treasury Department filed a *Proof of Claim* in the amount of $20,818.60 requesting priority under 11 U.S.C. § 507(a)(7) (Claims Register No. 15-1).

On July 11, 2011, the PR Treasury Department filed its *Answer to Complaint* (Docket No. 15)

2

admitting only that it is an unsecured creditor and denying all the other factual allegations.

On September 22, 2011, the Plaintiffs filed a *Motion for Partial Summary Judgment* (Docket No. 16) repeating the same allegations in the *Complaint* without attaching or making reference to any documents or sworn statements. References in the factual allegations of the *Motion for Partial Summary Judgment* were made to the "Verified Complaint"[1]. They sought partial summary judgment as to the PR Treasury Department's liability for willfully violating the automatic stay.

After requesting and obtaining an extension of time (Docket Nos. 20 and 21), on November 1, 2011, the PR Treasury Department filed an *Opposition to Motion for Partial Summary Judgment…* (Docket No. 22) alleging that the Plaintiffs failed to comply with the anti-ferreting rules of this Court inasmuch as they did not file a separate statement of material uncontested facts, any documents whatsoever or specific references to documents. In addition, it denies having violated the automatic stay and sustains that the *Notices of Attachment* issued to the banks were sent by mistake, which was immediately corrected. In regards to the punitive damages claimed by the Plaintiffs, the PR Department of Treasury argues that as a matter of law, the Commonwealth of Puerto Rico falls under the exception provided in 42 U.S.C. § 1981a(b)(1) and thus is exempt from punitive damages awards. No document or sworn statement was included with the PR Treasury Department's *Opposition*.

On January 27, 2012, this Court issued an Order denying the Plaintiff's *Motion for Summary Judgment* (Docket No. 27).

On March 11, 2012, the Plaintiffs filed an *Amended Motion for Partial Summary Judgment* (Docket No. 29) with a statement of material uncontested facts and several documents. They again aver that the PR Treasury Department wilfully violated the automatic stay by issuing the *Notices of Attachment* to Scotiabank and Doral, that they suffered damages as a consequence and that they should be compensated and awarded punitive damages. They seek partial summary judgment as to the PR Treasury Department's liability.

On July 2, 2012, the PR Treasury Department filed its *Opposition to the Plaintiffs' Amended Motion for Partial Summary Judgment* (Docket No. 39) denying having violated the automatic stay and

---

[1] The Court notes that the *Complaint* was not filed as a *Verified Complaint*. See Docket No. 1.

sustaining that the *Notices of Attachment* issued to the banks were sent by mistake, which was immediately corrected. It once more argues that the PR Department of Treasury is exempt from punitive damages awards. As to the *Notices of Attachment* included by the Plaintiffs, it contends that they are only administrative "notices", not collection efforts, and that the making of an assessment for any tax and the issuance of a notice and demand for payment is allowed by the Puerto Rico Internal Revenue Code (without stating the specific section) and Section 362(b)(9) of the Bankruptcy Code. Conversely, in regards to those same notices, the PR Treasury Department argues that its Mayaguez Branch "inadvertently sent [them]" but that it "did not cause any harm because [it] immediately stopped the process", "exercised affirmative duty to promptly remedy [them]" and that the Plaintiffs' "bank accounts were never recorded by any lien" and thus "[no] injury has occurred" (Docket No. 39, p. 13).

Legal Analysis and Discussion

*(A)     Standard for Partial Summary Judgment*

Fed. R. Bankr. P. 7056 makes Fed. R. Civ. P. 56 applicable to adversary proceedings. Fed. R. Civ. P. 56 provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056. See also In re Colarusso, 382 F.3d 51, 58 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright, Miller & Kane, Federal Practice and Procedure: 3d § 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). Also see López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st

Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

The court is required to view the pleadings in their entirety when passing a request for summary judgment. 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2722 at 368. To do so, it may consider affidavits, depositions, admissions, answers to interrogatories and similar material to determine whether or not any of the post-pleading material suggests the existence of any other triable genuine issues of material fact. Id., § 2721 at 365-366. For purposes of Fed. R. Civ. P. 56, admissions may include those on file, and those that emerge at the pretrial conference or report, during an oral argument on the motion, and those made in connection with one of the other discovery procedures or have their roots in a joint statement or stipulation. Id., § 2722 at 375-377; see also L&E Co. v. USA, 351 F.2d 880, 882 (9th Cir. 1965) (admissions emerged from the pretrial report); Spur Bottling Co. v. Canada Dry Gingar Ale, Inc., 98 F. Supp. 972, 978 (D.W.Ark. 1951) (admissions emerged from the pretrial report); U.S. v. Dooley, 424 F. 2d 1067, 1067-1068 (5th Cir. 1970) (admissions by appellant's counsel during oral argument were construed as a concession that the facts were not in dispute for purposes of Fed. R. Civ. P. 56); U.S. Hoffman Mach. Corp. v. Richa, 78 F. Supp. 969, 971-972 (D.C.Mo. 1948).

Fed. R. Civ. P. 56 was extensively rewritten in 2010. See 10B Wright, Miller & Krane Federal Practice & Procedure: Civil 3d § 2737. Amended subsection (a) of Fed. R. Civ. P. 56 now includes express authority for judgment on less than the entire case denominating it in its subsection title as "Partial Summary Judgment", which allows summary judgment "upon all or any part" of a claim or defense by any party.

In the instant case, the documents filed by the Plaintiffs have not been contested by the PR Treasury Department nor the dates when they were issued. The PR Treasury Department only contends the Plaintiffs' interpretation and reach. Thus, partial summary judgment is warranted.

*(B)      Violation of the Automatic Stay*

"The automatic stay is central to the administration of bankruptcy as it represents one of the most fundamental debtor protections provided by the bankruptcy laws." In re N. Parent, 221 B.R. 609, 627 (Bankr. D. Mass. 1998).  Also see Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503 (1986); S. Rep. No. 95-989, at 54 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840; Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997) (the automatic stay is "among the most basic of debtor protections under bankruptcy law.")  It is intended to give the debtor breathing room by "stop[ping] all collection efforts, all harassment, and all foreclosure actions." H. R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97; ICC v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir. 1991); In re Smith Corset Shops, Inc., 696 F.2d 971, 977 (1st Cir. 1982).

Section 362 of the Bankruptcy Code provides that upon filing for bankruptcy, a debtor is immediately protected by an automatic stay that prohibits, *inter alia*, the "continuation ... or other action or proceeding against the debtor that was or could have been commenced before the [bankruptcy petition] or to recover a claim against the debtor that arose before the commencement of the case under this title" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case..."  11 U.S.C. §§ 362(a)(1) and (a)(6).  "The stay springs into being immediately upon the filing of a bankruptcy petition: because the automatic stay is exactly what the name implies –'automatic'– it operates without the necessity for judicial intervention." In re Soares, 107 F.3d at 975, citing Sunshine Dev. v. FDIC, 33 F.3d 106, 113 (1st Cir. 1994); Nancy C. Derher & Joan N. Feeney, Bankruptcy Law Manual, Volume 1 § 7:1 (2011-12), p. 1374 ("[n]o judicial order or act is required to activate the [automatic] stay").  "This respite enables debtors to resolve their debts in a more orderly fashion and at the same time safeguards their creditors by preventing different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets." In re Soares, 107 F.3d at 975 (citations omitted).  In order to secure these important protections, courts must display a certain rigor in reacting to violations of the automatic stay.  See Kalb v. Feuerstein, 308 U.S. 433, 438-439 (1940), cited in In re Soares, 107 F.3d at 975-976.  After all, "the protections afforded by the automatic

stay are meaningless if they are not enforced." In re Beckett, 455 B.R. 9, 13-14 (Bankr. D. Mass. 2011).

The automatic stay imposes on non-debtor parties an affirmative duty of compliance. Sternberg v. Johnston, 595 F.3d 937, 943 (9th Cir. 2010). To ensure compliance, Section 362(k) of the Bankruptcy Code provides with means to redress violations of the stay: "an individual injured by a willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages". 11 U.S.C. § 362(k)(1). "A debtor seeking damages under this section bears the burden of proving by a preponderance of the evidence the following three elements: (1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 577-578 (B.A.P. 1st Cir. 2012), citing In re Panek, 402 B.R. 71, 76 (Bankr. D. Mass. 2009). A willful violation does not require a specific intent to violate the automatic stay. "The standard for a willful violation of the automatic stay ... is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Fleet Mortgage Group v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). "The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay." Id. at 269. "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." Id. at 269.

In the case at bar, the Plaintiffs satisfy the first requirement established In re Slabicki, 466 B.R. at 577-578. The Court finds that the PR Treasury Department violated the automatic stay pursuant to 11 U.S.C. §§ 362(a)(1) and (a)(6). Once the Plaintiffs filed for bankruptcy on October 25, 2010, the bankruptcy estate and the Plaintiffs were immediately protected by the automatic stay. Therefore, the PR Treasury Department was automatically stayed from collecting and attaching the bankruptcy estate's accounts for pre-petition past due taxes like those due in 1999, 2000 and 2001.

As to the second requirement, the Court finds that the violation of the automatic stay was willful. The Certificate of Service of the bankruptcy petition shows that the PR Treasury Department was duly notified on October 26, 2010. See Lead Case Docket No. 6, p. 5. Plaintiffs have met their burden of demonstrating that they provided the PR Treasury Department with actual notice of their bankruptcy petition and therefore the burden shifts to the creditor to prevent violations of the automatic

8

stay. Fleet Mortgage Group v. Kaneb, 196 F.3d at 269. To contest that the violation of the stay was willful, the PR Treasury Department avers: (a) that the *Notices of Attachment* were only "notices" of an "administrative procedure" pursuant to the Puerto Rico Internal Revenue Code, which is allowed by Section 362(b)(9) of the Bankruptcy Code; (b) that they "do not constitute a collection effort"; (c) that the "letter sen[t] by the [PR] Treasury Department Mayaguez' Office[2] clearly states that if the taxpayer is under the protection of the Bankruptcy Code, he or she [has] to notify such office"; (d) that the *Notices of Attachment* were sent inadvertently; and (e) that the PR Treasury Department "exercised its affirmative duty to promptly remedy" said *Notices*. See *Opposition to Motion for Partial Summary Judgment*, Docket No. 39, pp. 12-13. The Court is not moved by any of these arguments. The *Notices* were not just "notices", they expressly ordered the banks to attach and garnish any and all of the Plaintiffs accounts in those institutions up to the amount of $21,500.83 in favor of the Commonwealth of Puerto Rico. That is clearly more than a collection effort, it is a garnishment. Even if the Puerto Rico Internal Revenue Code provides for such action, the Bankruptcy Code is preempts it. See Central Virginia Community College v. Katz, 546 U.S. 356, 378 (2005) ("In ratifying the Bankruptcy Clause [U.S. Const. Art. I, § 8, Cl. 4], the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts.") Withal, Section 362(b)(9) of the Bankruptcy Code operates as an exception to the automatic stay for a "governmental unit"[3] like the PR Treasury Department to conduct audits to determine a tax liability, demand for tax returns or the making of an assessment for any tax and issuance of a notice and demand for payment. 11 U.S.C. § 362(b)(9). The *Notices of Attachment* do not fall under any of those circumstances. Likewise, even if the *Notices of Attachment* provided that the Plaintiffs had to notify the PR Department of Treasury Mayaguez's Office –requirement that after careful review this Court could not find– it does not trump the Bankruptcy Code's automatic stay

---

[2] The Court infers that said "letter" refers to the *Notices of Attachment*, because the PR Treasury Department did not attach any other document to its *Opposition to Motion for Partial Summary Judgment* nor did it specifically refer to any specific document from those attached by the Plaintiffs in their *Amended Motion for Partial Summary Judgment.* See Docket No. 39.

[3] The analysis of what constitutes a "governmental unit" under the Bankruptcy Court si further discussed in the next section of this opinion.

provision. The allegation that the *Notices* were sent "inadvertently" is irrelevant if they were sent after the creditor was notified of the bankruptcy petition, which is the case at hand. In view of the foregoing, this Court "must presume that the violation was deliberate." Fleet Mortgage Group v. Kaneb, 196 F.3d at 269. Furthermore, although the PR Treasury Department alleges that it "exercised its affirmative duty to promptly remedy" its mistake, no evidence whatsoever was proffered in support thereof and mere allegations are not evidence. See Nisenbaum v. Milwaukee County, 333 F.3d 804, 810 (7th Cir. 2003). Moreover, the Court notes that the *Notice of Attachment* issued to Doral (Docket No. 29, p. 19) was in the amount of $21,500.83, that on March 18, 2011, Doral seized from the Plaintiffs' account $1,732.51 (Docket No. 29, p. 20), and that the PR Treasury Department's *Proof of Claim* for the same taxes filed on April 15, 2011 was in the amount of $20,818.60 (Claim Register No. 15-1). The Court can infer from the record that the PR Treasury Department did not really "exercise its affirmative duty to promptly remedy" the situation.

Having satisfied the first two requirements established in the Plaintiffs in In re Slabicki, 466 B.R. at 577-578, and having found that the PR Treasury Department's violation of the automatic stay was willful, partial summary judgment can be issued as to its liability. In regards to the damages, if debtor establishes that such a willful violation occurred, a separate hearing shall be held at which the parties may present further evidence regarding injury and damages. See Laboy v. Doral Mortg. Corp. (In re Laboy), 647 F.3d 367, 376 (1st Cir. 2011).

*(B)     Punitive Damages*

The Plaintiffs seek punitive damages against the PR Treasury Department in their *Motion for Partial Summary Judgment* (Docket No. 29). They did not cite any legal authority for such request.

Section 362(k) of the Bankruptcy Code provides for recovery of damages, costs and attorneys' fees by an individual damaged by a willful violation of the automatic stay. In appropriate cases, an individual injured by the stay may also recover punitive damages if the individual establishes the normal elements of a claim for punitive damages, *i.e.*, egregious activity beyond the pale that was not only willful, but also sanctionable as out of the bounds of normal behavior. See Nancy C. Derher & Joan N. Feeney, Bankruptcy Law Manual, Volume 1 § 7:57 (2011-12), p. 1660. The Court has wide discretion to award punitive damages or not. Varela v. Quiñones Ocasio (In re Quiñones Ocasio), 272

B.R. 815, 825-828 (B.A.P. 1st Cir. 2002).

The PR Treasury Department briefly argues that 42 U.S.C. § 1981a(b)(1) provides that a complaining party may not recover punitive damages against a government, government agency or political subdivision. The argument is misplaced, as that statute refers to actions brought by citizens against the United States under the Civil Rights Act of 1964, not under the Bankruptcy Code. See 42 U.S.C. § 1981a(a). But the misplacement of the argument does not mean that the Plaintiffs are entitled to punitive damages *ipso jure*.

Puerto Rico is a considered a State for bankruptcy purposes pursuant to 11 U.S.C. § 101(52). The PR Treasury Department is a "governmental unit" pursuant to Section 101(27) of the Bankruptcy Code, which provides as follows:

> The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government. 11 U.S.C. § 101(27).

Section 106 of the Bankruptcy Code states that:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> (1) Section[] ... 362 [automatic stay].
>
> (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
>
> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, **but not including an award of punitive damages.** Such order or judgment for costs or fees under this title [11 U.S.C. §§ 101 *et seq.*] or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28 [28 U.S.C. § 2412(d)(2)(A)].
>
> (4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.
>
> (5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title [11 U.S.C. §§ 101 *et seq.*], the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

11

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose. 11 U.S.C. § 106 (emphasis added).

In the instant case, the Plaintiffs have not alleged, much less demonstrated, any egregious or sanctionable activity by the PR Treasury Department. And even if they had, no punitive damages can be awarded to them pursuant to 11 U.S.C. § 106(a)(3). Although the PR Treasury Department waived its sovereign immunity in this case by filing its *Proof of Claim* (Claims Register No. 15-1), this Court "may issue against [it] an order, process, or judgment ... including an order or judgment awarding a money recovery, **but not including an award of punitive damages**." 11 U.S.C. § 106(3) (emphasis added). Also see In re Schroeder, 2009 Bankr. LEXIS 3498, 2009 WL 3526504, 62 Collier Bankr. Cas. 2d 1279 (Bankr. D. Neb. 2009) (holding that sovereign immunity is not a defense that can be asserted by an agency that has violated the automatic stay, but punitive damages are not available against the State). Consequently, this Court lacks jurisdiction under 11 U.S.C. § 106 to impose punitive damages against the Commonwealth of Puerto Rico or its governmental units.

Conclusion

In view of the foregoing, the Plaintiffs' *Motion for Partial Summary Judgment* is granted only to determine the PR Treasury Department's liability for having willfully violated the automatic stay. The Plaintiffs claim for punitive damages is hereby denied and dismissed. An evidentiary hearing on the damages resulting from the violation of the automatic stay is hereby scheduled for February 19, 2013 at 2:00 p.m. The parties shall file proposed findings of fact and conclusions of law 10 days prior to the hearing. Each finding shall refer to a document or a witness indicating the proffered testimony.

Partial judgment shall be entered accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 2nd day of November, 2012.

Enrique S. Lamoutte
United States Bankruptcy Judge